[Cite as *State v. Croom*, 2016-Ohio-6997.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | CASE NO. 15 MA 0110 |
| V. | ) | |
| | ) | OPINION |
| STANLEY CROOM, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:  Criminal Appeal from Court of Common
Pleas of Mahoning County, Ohio
Case No. 2010 CR 35

JUDGMENT:  Affirmed

APPEARANCES:
For Plaintiff-Appellee  Paul Gains
Prosecutor
Ralph M. Rivera
Assistant Prosecutor
21 W. Boardman St., 6th Floor
Youngstown, Ohio 44503

For Defendant-Appellant  Attorney Fred D. Middleton
3139 Morley Road
Cleveland, Ohio 44122

JUDGES:

Hon. Gene Donofrio
Hon. Mary DeGenaro
Hon. Carol Ann Robb

Dated: September 22, 2016

DONOFRIO, P.J.

{¶1} Defendant-appellant, Stanley Croom, appeals from a Mahoning County Common Pleas Court judgment denying his motion for leave to file a postconviction petition.

{¶2} This case has been before this court on multiple occasions. The facts were set out in appellant's direct appeal as follows:

Around 7:20 p.m. on December 29, 2009, a man entered Belleria Pizza in Youngstown with a gun and demanded money from the register. The cashier hit a panic button, which alerted the Youngstown police. When she could not open the register, the robber left the store. She reported to Youngstown police that the robber was a black male around 50 years old wearing a black coat with brown fur around the hood. It was also reported that he was approximately 6 feet tall and 200 pounds.

The first responding officer watched the store's surveillance video and noticed that the robber had on a black wave cap and that he raised the fur-trimmed hood on his dark jacket as he neared the register. In addition, the officer noticed that the robber wore dark gloves with yellow writing on them.

A bystander outside of the restaurant reported the robbery to a police officer at Youngstown State University, stating that the robber was a dark-complected black man wearing a thick, black coat with fur and that another black male wearing a black hat was the get-away driver of an older model dark pink or maroon Lincoln with damage to the rear. (Tr. 687).

A police officer listening to the bulletin realized that she was familiar with the vehicle described therein. She testified to its distinctive "weird" color and the rear-end damage. She knew where the owner of the car lived because she worked security at his apartment building. (Tr. 666). She did not find the car there, but she did see it while

patrolling the streets less than an hour after the robbery, and she thus effected a stop of the vehicle. (Tr. 667).

Defendant-appellant Stanley Croom, the car's owner whom she recognized, was driving. (Tr. 670). Jeffrey Shorter, appellant's co-defendant in the robbery case, was the passenger. (Tr. 673). A black hat and black gloves with yellow writing were found in the vehicle. (Tr. 651). There was a large amount of DNA on both items that belonged to Shorter, and the gloves also had some DNA consistent with appellant's DNA (but also consistent with one out of fifty people).

Two days after the robbery, a detective showed two six-person photographic arrays to the victim. The victim picked the photograph of appellant from the second array. She did not identify anyone from the first array, which contained Shorter's photograph.

*State v. Croom*, 7th Dist. No. 12 MA 54, 2013-Ohio-5682, ¶ 3-8.

**{¶3}** Appellant was convicted of aggravated robbery with a firearm specification, having a weapon under disability, and attempted aggravated murder with a repeat violent offender specification (stemming from a charge that he attempted to have the victim/witness murdered). The trial court sentenced him to a total prison term of 30 years.

**{¶4}** In his direct appeal, this court reversed the having a weapon under disability conviction and remanded that matter. We affirmed appellant's other convictions. Plaintiff-appellee, the State of Ohio, later dismissed the having a weapon under disability charge.

**{¶5}** Relevant to this case is another case in which only Shorter was indicted and convicted. A robbery was committed at a Walgreen's store just days before the Belleria robbery. Shorter was charged in that case and eventually pleaded guilty to the Walgreen's robbery. There was a surveillance video available from the Walgreen's robbery. Appellant has contended throughout these proceedings that the Walgreen's video and the Belleria surveillance video show that it was the same

person (Shorter) who committed both of the robberies.

{¶6} Appellant filed his first postconviction petition on January 14, 2013. This petition focused on DNA evidence and witness credibility but it also mentioned the Walgreen's video. The trial court denied the petition. Appellant filed an appeal from that denial. *State v. Croom*, 7th Dist. No. 13 MA 98, 2014-Ohio-5635. We affirmed the trial court's judgment.

{¶7} Appellant filed his second postconviction petition on October 29, 2014. This time he included the Walgreen's video. The trial court overruled the petition. Appellant filed an appeal from that denial. Recently, we affirmed the trial court's judgment. *State v. Croom*, 7th Dist. No. 14-MA-175, 2016-Ohio-5686.

{¶8} Appellant next filed a "Motion for Leave to File Petition for Post Conviction Relief Pursuant to Ohio Revised Code 2953.21" (his third postconviction petition and the one that is the subject of this appeal) on December 18, 2014. Appellant alleged that he was entitled to postconviction relief based on the "newly discovered" video of the Walgreen's robbery, which was allegedly not produced during discovery. In support of his claims, appellant attached the affidavits of two of his three prior trial counsel who averred that they did not receive and were not told of the Walgreen's video. He claimed the Walgreen's video was not provided to him until two years after his conviction and even then, he could not view it because it required an expert videographer to enhance and print them. Appellant also attached his own affidavit stating that he has never actually seen the Walgreen's video.

{¶9} In response, the state filed a motion for summary judgment. The state alleged appellant could not prove he was unavoidably prevented from discovering the Walgreen's video in a timely manner because his prior counsel was aware of the video. Additionally, the state argued, even if appellant could prove he was unavoidably prevented from discovering the video, he did not establish by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found him guilty.

{¶10} In support of its motion, the state attached the affidavit of the prosecutor

who prosecuted appellant's and Shorter's cases. The prosecutor stated that on May 20, 2010, appellant's first appointed counsel filed a motion for exculpatory evidence in which he requested, among other items, all video tapes of any other aggravated robberies of which Shorter was a suspect. The prosecutor stated that she personally spoke to both appellant's and Shorter's counsel concerning the Walgreen's robbery and reviewed the photographs and video from the Walgreen's robbery with both counsel. The prosecutor further averred that appellant's counsel was aware of the Walgreen's robbery and reviewed the video.

{¶11} The trial court granted the state's motion for summary judgment and denied appellant's motion for leave to file a postconviction petition. The court noted that because this was a successive postconviction petition, appellant first had to establish that he was unavoidably prevented from the discovery of facts upon which he now relies to present his claim. The court found that appellant's former counsel was aware that Shorter was a suspect in the Walgreen's robbery. It further noted that at appellant's and Shorter's sentencing hearing, appellant claimed the prosecutor knew he was not guilty because she indicted someone else for the Walgreen's robbery based on the same photographs used in his case and mentioned the video. The trial court also pointed out that this court referenced the video in appellant's direct appeal from his conviction. Finally, the court noted that appellant's current counsel received a copy of the video on or about February 27, 2014. Yet appellant did not file his postconviction motion until October 29, 2014. Thus, the court found appellant was unable to establish that he was unavoidably prevented from discovering the Walgreen's video and denied appellant's motion.

{¶12} Appellant filed a timely notice of appeal on July 8, 2015. Appellant raises two assignments of error. In both assignments of error, appellant argues the trial court erred in overruling his postconviction petition without first holding a hearing and makes the same arguments in support. Therefore, we will address them together.

{¶13} Appellant's first assignment of error states:

THE TRIAL COURT ERRED IN DISMISSING APPELLANT'S POST-CONVICTION PETITION WHERE HE PRESENTED SUFFICIENT OPERATIVE FACTS TO MERIT AN EVIDENTIARY HEARING AND REVERSAL BASED ON NON PRODUCTIONS OF DISCOVERY IN VIOLATION OF APPELLANT'S RIGHTS AS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

**{¶14}** Appellant's second assignment of error states:

THE COURT ERRED IN OVERRULING THE MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE PURSUANT TO OHIO RULE OF PROCEDURE 33 AND OHIO REVISED CODE SECTION 2353.21.

**{¶15}** Appellant argues the state was in possession of the Walgreen's video prior to his trial but never mentioned it to him. Appellant asserts his defense was based on his being misidentified by the Belleria cashier. He claims he did not learn about the Walgreens video until two years after he had already been in prison. The Walgreen's video, appellant claims, shows that Shorter was the robber at Walgreen's and when viewed with the Belleria video, shows that Shorter was the robber there as well. Appellant urges these facts show that he could not present this evidence within 180 days of his conviction. He claims the state withheld this exculpatory evidence from him. Appellant asserts the affidavits he presented demonstrate that the state only mentioned and produced the Belleria video, not the Walgreen's video. For these reasons, appellant argues the trial court erred in failing to hold a hearing on his petition.

**{¶16}** An appellate court reviews a trial court's denial of a petition for postconviction relief under an abuse of discretion standard. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 58. Abuse of discretion connotes

more than an error of law; it implies the trial court acted arbitrarily, unreasonably, unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶17} A postconviction petitioner is not automatically entitled to a hearing. *State v. Cole*, 2 Ohio St.3d 112, 443 N.E.2d 169 (1982). Before granting an evidentiary hearing on the petition, the trial court shall determine whether there are substantive grounds for relief. R.C. 2953.21(C). The trial court's decision of whether to hold an evidentiary hearing in postconviction matters is reviewed for abuse of discretion. *State v. Haschenburger*, 7th Dist. No. 08-MA-223, 2009-Ohio-6527, ¶ 43.

{¶18} A trial court may not entertain a second postconviction petition or successive postconviction petitions unless both of the following apply:

> (a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.
>
> (b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty * * *.

R.C. 2953.23(A).

{¶19} The thrust of appellant's argument as to why he was unavoidably prevented from discovering the facts upon which he now relies is that the prosecutor never informed him of the Walgreen's video and he was unaware of the video until two years after he was convicted.

{¶20} But the record is replete with examples that appellant was aware of the

Walgreen's video as early as May 2010.

**{¶21}** On May 20, 2010, while preparing for trial, appellant's first appointed counsel filed a motion for exculpatory evidence. The motion specifically requested the state to provide appellant "with all police reports, witness statements, pictures, and video tapes of *any other aggravated robberies* of which co-Defendant Jeffrey Shorter is a suspect." (Emphasis added; May 20, 2010, Defendant's Motion for Exculpatory Evidence). The motion stated it was appellant's belief that these items contained exculpatory evidence.

**{¶22}** A year later, on May 12, 2011, appellant's third appointed counsel filed a motion to withdraw. In support, counsel attached a copy of a letter appellant wrote to him. Included in appellant's letter to his third appointed counsel, were the following statements: "Then the original disk of the robbery to prove it's not me nobody wants to put it on display. You as my attorney should be hell over hills getting that. Not no copy of it but the original!!!" (May 12, 2011, Motion to Withdraw as Counsel).

**{¶23}** Then on August 1, 2011, appellant wrote a letter to the trial court. In the letter appellant wrote, "I know for a fact that you and the prosecutor know this as well. How I know this: for a victim to point finger at me robbing her and the same person on camera robbing a Walgreens that suppose [sic.] to have robbed Belleria. That be the case then why was Shorter indicted for robbing Walgreens if I am the person in the photo robbing Belleria?" (August 1, 2011, letter to court).

**{¶24}** And at appellant's sentencing hearing, he stated that the prosecutor "knows I'm not the robber because she did indict someone else for another robbery based upon the same photos of the robbery in this case that was used in this robbery." (Sentencing Tr. 26). When the court stated it did not know anything about that situation, appellant stated, "[t]he Walgreen's robbery that she indicted Mr. Shorter on[.]" (Sentencing Tr. 26).

**{¶25}** Moreover, in appellant's direct appeal of his conviction, his appointed counsel stated that appellant complained that the state "withheld a video tape of

another robbery," which appellant believed would exonerate him. (Appellate brief filed November 21, 2012, case number 12-MA-54). Counsel then stated, however, there was nothing in the record to suggest these allegations were true. In addressing appellant's allegations on appeal, this court found "there is no indication that the information was unknown to the defense during trial." *Croom*, 2013-Ohio-5682, at ¶ 147.

{¶26} Considering all of the above, we cannot conclude that the trial court abused its discretion in denying appellant leave to file a successive postconviction petition without holding a hearing. The record demonstrates that appellant was well aware of the Walgreen's video for quite some time. There are indications that he knew about it as early as May 2010. The video was mentioned before trial, at sentencing, on direct appeal of his conviction, and in appellant's first and second postconviction petitions. Thus, appellant has not demonstrated that he was unavoidably prevented from discovering the Walgreen's video until two years after his conviction, as he now alleges.

{¶27} Accordingly, appellant's first and second assignments of error are without merit and are overruled.

{¶28} For the reasons stated above, the trial court's judgment is hereby affirmed.

DeGenaro, J., concurs.

Robb, J., concurs.